IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF STOCKTON,<br><br>    Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>    Defendants | No. C-08-4060 MMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR DISCRETIONARY REMAND** |

    By order filed November 13, 2008, the Court denied plaintiff City of Stockton's ("Stockton") "Motion for Remand to State Court." In said order, the Court found it had jurisdiction over plaintiff's claims, as alleged in the initial complaint, under the Edge Act, 12 U.S.C. § 632. Further, the Court noted therein that Stockton, on November 7, 2008, had filed five notices of voluntary dismissal, by which it dismissed its claims against each of the five foreign banks named as defendants, and a Supplemental Brief, in which Stockton argued that, in light of such subsequent development, the action should be remanded. The Court construed Stockton's Supplemental Brief as a separate motion, i.e., a motion for discretionary remand, and set a briefing schedule thereon. Thereafter, on November 17, 2008, defendants AIG Financial Products Corp. and AIG SunAmerica Life Assurance Company (collectively, "AIG"), filed opposition, in which defendants Bank of America, N.A., and Banc of America Securities LLC have joined. On November 19, 2008, Stockton filed a

reply.  Having read and considered the papers filed in support of and in opposition to Stockton's motion for discretionary remand, the Court rules as follows.

In its initial complaint, Stockton alleged that twenty-nine providers of Guaranteed Investment Contracts ("GICs"), some of which are foreign banks, along with twelve GIC brokers, "conspired to decrease the returns that public entities earned on [GICs] by allocating the Municipal Derivative market amongst themselves and rigging the bidding process by which public entities acquired [GICs]."  (See Compl. ¶ 1.)  As is discussed in detail in the Court's November 13, 2008 order, because the providing of GICs constitutes "banking," for purposes of 12 U.S.C. § 632, and because Stockton alleged that each foreign defendant bank participated in the subject conspiracy, the Court found Stockton's claims, as pleaded in the initial compliant, arose "out of transactions involving international or foreign banking."  See 12 U.S.C. § 632 (providing district courts have "original jurisdiction" over claims "arising out of transactions involving international or foreign banking").

In its pending motion, Stockton argues that because Stockton, subsequent to the removal of the complaint, dismissed each of the foreign banks, the Court no longer has original jurisdiction over Stockton's claims and should decline to exercise supplemental jurisdiction over the instant action.  More specifically, Stockton argues, Stockton's claims no longer arise out of any transaction involving international or foreign banking, because, "[t]he bid-rigging and market allocation conspiracy alleged in the [c]omplaint, as amended by the dismissal of the [foreign entities], does not depend on participation of the [foreign entities] for either its success or unlawfulness."  (See Pl.s' Reply, filed November 19, 2008, at 2:1-4.)[1]

As AIG points out in opposition, however, Stockton has not amended any of the factual allegations in the complaint.  Stockton thus continues to allege that each foreign

---

[1] For purposes of this motion, Stockton "continues to maintain that the instant suit without amendment does not arise out of a transaction involving international or foreign banking, but is not challenging the Court's decision on that issue."  (See id. at 5:27-28.)

bank identified in the complaint is a member of the alleged illegal agreement, that each such foreign bank, to further the illegal agreement, determined the manner in which it would bid on and provide GICs at the time Stockton sought the submission of bids, and that such actions by the foreign banks caused harm to Stockton. (See Compl. ¶¶ 18, 33, 35, 40, 41 (alleging each named foreign bank "engaged in the misconduct that led to the harm suffered by [Stockton]").)[2]

To the extent Stockton argues the domestic brokers are/were "run[ning]" the conspiracy (see Pl.'s Reply at 4:25), such argument is unavailing; as discussed in the Court's November 13, 2008 order, "'a suit satisfies the jurisdictional requisites of Section 632 if any part of it arises out of transactions involving international or foreign banking.'" See Pinto v. Bank One Corp., 2003 WL 21297300, at *3 (S.D. N.Y. 2003) (quoting In re Lloyd's American Trust Fund Litig., 928 F. Supp. 333, 338 (S.D. N.Y. 1996)). In sum, although Stockton no longer seeks to recover a monetary judgment against any of the foreign banks identified in the complaint,[3] it continues to allege that the harm it suffered was caused by those foreign banks, acting in concert with domestic banks and other entities.

---

[2] Stockton correctly observes that a conspiracy to fix prices is unlawful "[e]ven though the members of the price-fixing group [are] in no position to control the market." See Mailand v. Burckle, 20 Cal. 3d 367, 376 (1978) (internal quotation and citation omitted). Stated otherwise, Stockton would not be precluded from establishing liability against entities that conspired to fix the rate of return earned by GIC investors, merely because some providers of GICs were not members of any such conspiracy. This principle of law is not implicated by Stockton's dismissal of the foreign bank defendants, however, because the operative complaint continues to allege that such foreign banks were members of the conspiracy, and, as noted, that each such foreign bank, in furtherance of the conspiracy to fix prices, engaged in conduct that harmed Stockton.

[3] Stockton does not argue that jurisdiction under § 632 is dependent upon Stockton's naming as a defendant a foreign bank. Indeed, as AIG points out, several courts have found jurisdiction under § 632 proper in an action against a domestic entity arising from a transaction involving international or foreign banking, and in which the foreign entity was not named as a party. See, e.g., Pinto, 2003 WL 21297300, at *2-3 (finding jurisdiction under § 632 proper in action against domestic banks, where plaintiff alleged defendants advanced monies to non-defendant foreign banks which had "processed [plaintiff's] Internet gambling charges"); In re Lloyd's American Trust Fund Litig., 928 F. Supp. at 338-39 (finding jurisdiction under § 632 proper in action against domestic bank, where plaintiff sought to enjoin defendant from "transferring [ ] funds and accepting directions from [foreign entity]").

Under such circumstances, the Court continues to have original jurisdiction over Stockton's claims, as currently pleaded, pursuant to 12 U.S.C. § 632, and, accordingly, the Court lacks discretion to remand the complaint pursuant to 28 U.S.C. § 1367(c) or otherwise.

## CONCLUSION

For the reasons stated above, plaintiff's motion for discretionary remand is hereby DENIED.

**IT IS SO ORDERED.**

Dated: November 21, 2008

MAXINE M. CHESNEY
United States District Judge